UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| RORY SNOWDEN, | CIVIL ACTION NO. 5:18-425-KKC |
|     Plaintiff, | |
| v. | OPINION AND ORDER |
| SPEEDWAY LLC, | |
|     Defendant. | |

**\*\*\* \*\*\* \*\*\***

This matter is before the Court on Defendant's motion to exclude the expert opinion of Dr. Anthony J. McEldowney and Defendant's motion for summary judgment. (DEs 50, 51.) Plaintiff having responded (DEs 53, 54) and Defendant having replied (DEs 55, 56), the matter is now ripe for the Court's review. For the reasons set forth herein, both of Defendant's motions are GRANTED.

## I. Background

### A. The Slip-and-Fall Incident and Snowden's Subsequent Medical Treatment

This case arises out of an incident on December 11, 2016, when Rory Snowden entered a Speedway location, slipped, and fell. (DE 53-1 at 11–12.) One year later, Snowden filed a lawsuit against Speedway in state court, alleging negligence and seeking damages for: (a) past mental and physical pain, suffering, and inconvenience; (b) future mental and physical pain, suffering, and inconvenience; and (c) past and future medical expenses. (DE 1-1 at 4–5.)

According to Snowden's description of the incident, his foot twisted and his left knee struck the floor. (DE 53-1 at 16.) The next day, Snowden described pain in his left knee from

1

the strike, as well as in his back. (*Id*. at 24.) Snowden sought treatment first from Concentra Urgent Care (DE 50-4) and then, for several months, from Bailey Chiropractic. (DE 50-5.) After his care with Bailey Chiropractic, Snowden reported to Kort Physical Therapy in April 2017, where he reported that his left knee pain was recently resolved, but left lumbar and hip pain remained. (DE 50-6 at 2.) He continued treatment at Kort until June 2017, when he reported low back stiffness, but no more pain, and his provider described his prognosis as "good." (*Id*. at 33.) Shortly after completing treatment at Kort, Snowden reported to the VA Medical Center with complaints of mild right knee pain, which he believed may have occurred at his new job although he noted a history of right knee pain since his active duty military service. (DE 50-3 at 94–100.) Six months later, an MRI at the VA showed that Snowden's right knee suffered from:

> Mid substance tear of the lateral collateral ligament. Large radial tears in the lateral meniscus resulting in absence of the body which appears to be displaced into the intercondylar notch. Bucket-handle tear of the body and anterior horn medial meniscus. Marked osteochondral degenerative change involving the femoral condyles with marginal osteophytes on the lateral side. Mild effusion. Osteochondral loose bodies in the joint. Minimal Baker's cyst.

(*Id*. at 103.) Snowden's VA provider noted that the meniscus tear was "likely part of the knee arthritis process." (*Id*. at 106.) Approximately nine months later, in October 2019, Snowden underwent surgery on his right knee to address his meniscus tear. (DE 30-1 at 6.)

**B. Snowden's History of Knee Issues**

Prior to the slip-and-fall incident, Snowden had an extensive history of knee issues. Snowden's medical records indicate a right knee surgery in 1986 to remove cartilage and due to a "torn meniscus." (DE 50-3 at 3.) In 2003, Snowden reported to the VA with "8/10" knee pain in both knees and was diagnosed with osteoarthritis in his knees. (*Id*. at 7.) Six years later, Snowden underwent arthroscopic surgery on his left knee to remove a "loose body." (*Id*. at 9.) During that procedure, doctors noted "Grade 2 & 3 degenerative changes on the medial

Case: 5:18-cv-00425-KKC   Doc #: 57   Filed: 11/30/21   Page: 3 of 13 - Page ID#: 1423


and lateral femoral condyles as well as the trochlea." (*Id.* at 16.)  In 2010, Snowden returned to the VA with right knee pain, which doctors treated with a steroid injection.  (*Id.* at 37.)  At that time, Snowden had a service-connected disability rating from the VA of 30% for the following conditions: traumatic arthritis (10%), knee condition (10%), and limited flexion of knee (10%).  (*Id.* at 39.)

In 2011, Snowden again reported right knee pain to a VA doctor, who noted that an MRI showed that "[t]he lateral meniscus is absent and there is a small / of a loose body in the lateral compartment anterior to the condyle."  (*Id.* at 41.)  A 2014 VA examination indicated that Snowden had impaired movement, excess fatigability, and pain in both knees and residual symptoms from both of his previous knee surgeries.  (*Id.* at 47–50.)  In November 2016, the month prior to the slip-and-fall incident, Snowden reported to the VA with left knee pain and was diagnosed with pre-patellar burstitis in his left knee.  (*Id.* at 55–60.)  A few days prior to the slip-and-fall incident, Snowden again went to the VA with left knee pain, and the treating physician indicated that Snowden "likely ha[d] gout or arthritic flare up." (*Id.* at 69.)

**C. Procedural Background**

This case was originally scheduled for trial in November 2019.  (DE 6.)  Snowden first moved to continue the trial in September 2019 (DE 18) to undergo knee surgery. The trial was rescheduled for May 2020 (DE 22), rescheduled again for October 2020 (DE 23), and then continued generally.  (DE 40.)  In March 2021, Snowden reported that he had identified Dr. Anthony J. McEldowney as an expert witness who would testify that the slip-and-fall incident eventually led to Snowden's right knee injuries.  (DE 44.)

The Court ordered that discovery be re-opened for the limited purposes of identifying expert witnesses and rebuttal witnesses, deposing such experts, filing expert reports, and filing relevant motions.  (DE 46.)  Speedway then filed a motion to exclude Dr. McEldowney

as an expert witness and a motion for summary judgment.  (DEs 50, 51.)  Snowden responded

(DEs 53, 54), Speedway replied (DEs 55, 56), and the motions are now ripe for the Court's

review.

## II. Motion to Exclude Plaintiff's Expert

### A. Applicable Law

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme

Court "established guidelines for district courts to use in determining the admissibility of

expert testimony pursuant to Rules 702 and 104 of the Federal Rules of Evidence." *Pride v.

BIC Corp.*, 218 F.3d 566, 577 (6th Cir. 2000). *Daubert* applies to "scientific," "technical," and

"otherwise specialized" knowledge. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999).

"Although . . . the evaluation of expert testimony is generally left to juries, the Court

emphasized the trial judge's 'gatekeeping' role with respect to expert proof."  *Pride*, 218

F.3d at 577 (citing *Daubert*, 509 U.S. at 597–98). Federal Rule of Evidence 702 provides

that an expert who is qualified:

> by knowledge, skill, experience, training, or education may testify in the form
> of an opinion or otherwise if:
>> (a) the expert's scientific, technical, or other specialized knowledge will
>> help the trier of fact to understand the evidence or to determine a fact
>> in issue;
>> (b) the testimony is based on sufficient facts or data;
>> (c) the testimony is the product of reliable principles and methods; and
>> (d) the expert has reliably applied the principles and methods to the
>> facts of the case.

A proposed expert witness "must first establish his expertise by reference to 'knowledge,

skill, experience, training, or education.'" *Pride*, 218 F.3d at 577 (quoting FED. R. EVID.

702). Next, the expert must testify as "to 'scientific, technical or other specialized

knowledge.'" *Id.* (quoting FED. R. EVID. 702). "[T]his requirement serves to establish a

standard of evidentiary reliability or trustworthiness" and "the *Daubert* Court instructed

district courts . . . to determine whether the principles and methodology underlying the testimony itself are valid – not to second guess the validity of conclusions generated by otherwise valid methods, principles, and reasoning." *Id.* (citations and internal quotation marks omitted).

"Red flags that caution against certifying an expert include reliance on anecdotal evidence, improper extrapolation, failure to consider other possible causes, lack of testing, and subjectivity." *Newell Rubbermaid, Inc. v. Raymond Corp.*, 676 F.3d 521, 527 (6th Cir. 2012) (citing *Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 177 (6th Cir. 2009)). The fact that a purported expert's opinion was prepared solely for litigation may also be considered as a basis for exclusion. *Id.* (citing *Johnson v. Manitowoc Boom Trucks, Inc.*, 484 F.3d 426, 434 (6th Cir. 2007)). The trial court's gatekeeping role does not permit it to reject admissible expert testimony with a reasonable factual basis, but it does permit exclusion when an expert's testimony amounts to "mere guess or speculation." *In re Scrap Metal Antitrust Litigation*, 527 F.3d 517, 530 (6th Cir. 2008) (citing *U.S. v. L.E. Cooke Co., Inc.*, 991 F.2d 336, 342 (6th Cir. 1993)).

If the Court decides that the expert testimony is both reliable and relevant, then the Court must also determine if the probative value of the expert testimony is outweighed by its prejudicial effect. *Daubert*, 509 U.S. at 595; *see also*, *United States v. Beverly*, 369 F.3d 516, 528 (6th Cir. 2004). The testimony must assist the trier of fact and "must 'fit' the facts of the case . . . ." *Pride*, 218 F.3d at 578 (citing *Daubert*, 509 U.S. at 592). But it is not "proper for the witness to testify as to a legal conclusion; it is the sole function of the trial judge to instruct the jury on the law." *United States v. Zipkin*, 729 F.2d 384, 397 (6th Cir. 1984). Nevertheless, "[t]he Rules' basic standard of relevance . . . is a liberal one," *Daubert*, 509 U.S. at 587.

Ultimately, a Rule 702 inquiry is "a flexible one." *Id.* at 594; *see also Kumho Tire Co.*, 526 U.S. at 152 ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."). The party proffering the expert testimony must demonstrate by a preponderance of proof that the potential expert witness meets the requirements discussed above. *Pride*, 218 F.3d at 578 (citing *Daubert*, 509 U.S. at 592 n.10).

In order to determine whether Dr. McEldowney's testimony should be excluded, the Court must analyze in turn his qualifications, the reliability of his testimony, and the helpfulness of his testimony to the trier of fact.

## B. Dr. McEldowney's Qualifications

Defendant does not contest Dr. McEldowney's qualifications. Dr. McEldowney is an orthopedic specialist that has served as an expert witness in numerous cases. (DE 50-2 at 7–10.) Because Dr. McEldowney appears to be qualified to offer an expert opinion on orthopedics in this case and Defendant offers no evidence to the contrary, the Court believes that Dr. McEldowney's qualifications are sufficient.

## C. The Reliability of Dr. McEldowney's Testimony

Next, the Court will turn to the reliability of Dr. McEldowney's testimony, which is the issue primarily cited by Defendant in favor of exclusion. (DE 50-1 at 11–25.)

Defendant makes five primary arguments against the reliability of Dr. McEldowney's opinion: (1) there is no literature supporting Dr. McEldowney's opinion; (2) Dr. McEldowney's causation theory is speculative; (3) Dr. McEldowney improperly relies on sequential events; (4) Dr. McEldowney conducted an incomplete and unreliable differential diagnosis; and (5) Dr. McEldowney's differential diagnosis is speculative. (*Id.*) Plaintiff likewise counters that: (1) Dr. McEldowney's causation opinion is clear, definitive, and reliable, not speculative; (2) Dr. McEldowney is not required to support his opinion with medical literature; and (3) the

6

remainder of Speedway's "reliability" arguments go to the weight to be given Dr. McEldowney's testimony, not admissibility.  (DE 53 at 6–21.)

The thrust of Dr. McEldowney's medical opinion is that Snowden injured his left knee when he fell, causing a gait abnormality that then injured Snowden's right knee and caused lower back pain.  (DE 50-2 at 5.)  Dr. McEldowney notes that his opinion is based on an evaluation of Snowden's medical records, one examination of Snowden, and a review of a purported video of the slip-and-fall.  (*Id.* at 2.)

A district court's reliability inquiry is a flexible one. *Daubert*, 509 U.S. at 594–95. The Supreme Court provided a list of potentially relevant factors, such as whether the expert's theory has been tested, peer-reviewed, or generally accepted. *See id.* at 591–95. However, that list is not exhaustive, nor is any one factor dispositive. *In re Scrap Metal Antitrust Litigation*, 527 F.3d at 528–29. District courts are permitted "considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable." *Kumho Tire Co.*, 526 U.S. at 152.

Snowden is correct to point out that a lack of supporting literature is not, in itself, fatal to the admissibility of Dr. McEldowney's testimony. *Jahn v. Equine Services, PSC*, 233 F.3d 382, 393 (6th Cir. 2000). However, Speedway is also correct when it notes that "[i]f the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached . . . and how that experience is reliably applied to the facts." *Thomas v. City of Chattanooga*, 398 F.3d 426, 432 (6th Cir. 2005) (internal citations omitted). The Court cannot simply take the expert's word for it. *Id.* (citing FED. R. EVID. 702 advisory committee's note). A district court may exclude expert opinion evidence if "there is simply too great an analytical gap between the data and the opinion proffered." *Rolen v.*

7

*Hansen Beverage Co.*, 193 Fed. App'x 468, 473 (6th Cir. 2006) (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)).

Dr. McEldowney's written report cites Snowden's medical records to establish his medical history and an examination of Snowden, including his self-reported symptoms, to establish his current condition.  (DE 50-2 at 2–5.)  Dr. McEldowney then states: "It is my medical opinion that the initial injury to left knee caused a gait abnormality which caused initial non-disabling condition of right knee to become disabling condition and requiring subsequent treatment and ongoing gait abnormality continues to cause soft tissue muscular symptoms in lower back."  (*Id.* at 5.)

While Dr. McEldowney does not explicitly refer to his methodology as a "differential diagnosis," that is what it approximately appears to be. *See Hardyman v. Norfolk & W. Ry. Co.*, 243 F.3d 255, 260 (6th Cir. 2001) (describing differential diagnosis as "[t]he method by which a physician determines what disease process caused a patient's symptoms. The physician considers all relevant potential causes of the symptoms and then eliminates alternative causes based on a physical examination, clinical tests, and a thorough case history."). The Sixth Circuit has adopted the following test for evaluating differential diagnoses:

> A medical-causation opinion in the form of a doctor's differential diagnosis is reliable and admissible where the doctor (1) objectively ascertains, to the extent possible, the nature of the patient's injury, *see* [*In re Paoli Railroad Yard PCB Litigation*, 35 F.3d 717 (3d Cir. 1994)] at 762 ("A physician who evaluates a patient in preparation for litigation should seek more than a patient's self-report of symptoms or illness and . . . should . . . determine that a patient is ill and what illness the patient has contracted."), (2) "rules in" one or more causes of the injury using a valid methodology, and (3) engages in "standard diagnostic techniques by which doctors normally rule out alternative causes" to reach a conclusion as to which cause is most likely. *Id.* at 760.
> In connection with the third "rules out" prong, if the doctor "engage[s] in very few standard diagnostic techniques by which doctors normally rule out alternative causes," the doctor must offer a "good explanation as to why his or her conclusion remain[s] reliable." *Id.* Similarly, the doctor must provide a

> reasonable explanation as to why "he or she has concluded that [any alternative cause suggested by the defense] was not the sole cause." *Id.* at 758 n.27.

*Best*, 563 F.3d at 179. It is clear from Dr. McEldowney's report that he relies extensively on Snowden's self-reporting.  (DE 50-2.)  In his report, Dr. McEldowney does not describe what valid methodology he used to "rule in" the December 2016 fall as a cause of Snowden's current injuries, nor does he describe what standard diagnostic techniques he used to "rule out" alternative causes. Dr. McEldowney seems to rely primarily on the logical fallacy that a causal relationship exists just because certain events happened sequentially. *See Rolen*, 193 Fed. App'x at 473 ("Expert opinions based upon nothing more than the logical fallacy of *post hoc ergo propter hoc* typically do not pass master under *Daubert.*"). Dr. McEldowney's deposition illustrates this reality further.[1] While Dr. McEldowney notes that "the medical records are more important than the actual examination" (DE 50-11 at 15–16), he does not explain why Snowden's extensive medical records do not mention the "abnormal gait" that apparently caused his current injuries. When asked about a potential alternative cause—a self-reported work injury—mentioned in Snowden's medical record, Dr. McEldowney responds that the medical records might be inaccurate.  (*Id.* at 59.)  Dr. McEldowney's methodology simply does not meet the bar for reliability set by the Sixth Circuit's test.

---

[1] *See* (DE 50-11 at 17) ("Q. What did you do in preparing your report to . . . exclude these other preexisting issues as a possible cause of the injury? A. I don't think I -- I don't think I precluded them."); (*Id.* at 19) ("I can't, with good conscious [sic], say that that fall created a meniscal tear."); (*Id.* at 24) ("Q. . . . is it your testimony that as of at least 2014 . . . he was close to perhaps needing a knee replacement? A. We don't know how close; one day to ten years."); (*Id.* at 25) ("Q. So is it possible that if this fall had not occurred in 2016, he still would have needed a knee replacement? A. That's all speculation; we do not know. But it could have been. We don't know that. No one will ever know that. But, yes, in speculation, it could have happened."); (*Id.*) ("Q. So then how do you know for sure, then, that the fall in 2016 is what exacerbated this degenerative condition? A. Because he had a change in his symptoms three to six months after putting the pressure on the right knee."); (*Id.* at 27–28) ("Q. Are there any potential other explanations, other than just simply the fact that he fell? A. There could be a lot of contributing forces. I mean, the stairs that he walked at work, playing basketball, all those.").

Rule 702 does not at all require absolute certainty, but it does require more than speculation. *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671–72 (6th Cir. 2010). The speculation and *ipse dixit* of the expert alone is not sufficient to permit the admission of an opinion, now matter how good an expert's credentials may be. *Id.* at 671 (citing *Gen. Elec. Co.*, 522 U.S. at 146, and *Goebel v. Denver & Rio Grande W. R.R. Co.*, 215 F.3d 1083, 1088 (10th Cir. 2000)).

Based on a complete examination of the record before it, the Court finds that the testimony offered by Dr. McEldowney as an expert witness does not meet the Sixth Circuit standard for reliability.

## D. The Helpfulness of Dr. McEldowney's Testimony to the Trier of Fact

Rule 702 requires that expert testimony assist the trier of fact. *Pride*, 218 F.3d at 578. Because Dr. McEldowney's testimony is unreliable as a matter of law, it will not assist the trier of fact in understanding and disposing of the relevant issues in this case. *See id.* (citing *Daubert*, 509 U.S. at 592).

In sum, Dr. McEldowney's testimony does not meet the standards for expert testimony set forth in Rule 702 and *Daubert*, as interpreted by the Sixth Circuit.

### III. Motion for Summary Judgment

Having excluded Plaintiff's expert, the Court will now turn to Defendant's motion for summary judgment.  (DE 51.)

## A. Applicable Law

Fed. R. Civ. P. 56(a) directs the Court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A party seeking summary judgment bears the initial burden of informing the Court of the basis for its motion with particularity. *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986). The party opposing the motion must then make an affirmative showing of a genuine dispute in order to defeat the motion. *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). To do so, the non-moving party must direct the Court's attention "to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001).

The Court will draw all reasonable inferences in favor of the non-moving party and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986). If the Court determines that a rational fact finder could not find for the non-moving party based on the record as a whole, there is no genuine issue for trial, and the Court should grant summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## B. Plaintiff Cannot Survive Summary Judgment Without Expert Testimony

Snowden alleges negligence by Speedway and seeks damages for: past mental and physical pain, suffering, and inconvenience; future mental and physical pain, suffering, and inconvenience; and past and future medical expenses. (DE 1-1 at 4–5.) In Kentucky, a successful negligence claim requires proof of "(1) a duty owed by the defendant to the plaintiff, (2) breach of that duty, (3) injury to the plaintiff, and (4) legal causation between the defendant's breach and the plaintiff's injury." *Wright v. House of Imports, Inc.*, 381 S.W.3d 209, 213 (Ky. 2012) (citing *Pathways, Inc. v. Hammons*, 113 S.W.3d 85, 88–89 (Ky. 2003)). In this case, the parties have rightfully focused on the causation prong as the central issue.

According to Kentucky law, a plaintiff ordinarily must present expert medical testimony to establish the causal link between an accident and his injuries. *Roark v.*

*Speedway*, No. 13-139-ART, 2015 WL 12978822, at *1 (E.D. Ky. Apr. 6, 2015) (citing *Jarboe v. Harting*, 397 S.W.2d 775, 778 (Ky. 1965)). The only exception is when causation is "so apparent that laymen with general knowledge will have no difficulty recognizing it." *Id.* District courts have found that exception inapplicable when plaintiffs claim to suffer from symptoms similar to symptoms they experienced prior to the incident of the litigation. *See, e.g., Blair v. GEICO Gen. Ins. Co.*, 917 F. Supp. 2d 647, 658 (E.D. Ky. 2013) (describing how a jury would be unable to determine without expert medical testimony whether an accident caused pain in a plaintiff with pre-existing pain in the same body part); *Roark*, 2015 WL 1297822, at *2 (same); *McFerrin v. Allstate Prop. & Cas. Co.*,, 29 F. Supp. 3d 924, 926–27 (E.D. Ky. 2014) (same).

Snowden does not disagree that he must have expert proof of causation to survive summary judgment as to his right knee. (DE 54 at 6.) However, Snowden argues that his left knee injuries do not require expert testimony. (*Id.*) The Court disagrees. Snowden had a history of issues with and surgeries on both knees prior to the December 2016 incident. (DE 50-3 at 3, 7, 9, 16, 39, 47–50.) Snowden reported to the VA with left knee pain a month prior to the incident and he did so again just a few days before the incident. (*Id.* at 55–60, 69.) Due to these pre-existing knee injuries, a lay jury would be unable to determine which, if any, of Snowden's later knee issues were caused by the Speedway incident specifically without testimony from a medical expert.

Because Snowden's medical expert must be excluded for failing to meet the standards for reliable expert testimony, Snowden cannot, as a matter of law, establish causation. Without that essential element, Snowden's negligence claim fails, and Speedway is entitled to summary judgment.

## IV. Conclusion

Accordingly, for the reasons set forth herein, **IT IS HEREBY ORDERED**:

(1)  Defendant's Motion to Exclude Plaintiff's Expert (DE 50) is **GRANTED**;

(2)  Defendant's Motion for Summary Judgment (DE 51) is **GRANTED**;

(3)  All pending deadlines and hearings are **CANCELLED**;

(4)  The Clerk of the Court shall **STRIKE** this case from the Court's active docket; and

(5)  A separate Judgment will issue.

This 30th day of November, 2021.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY

13